OPINION
{¶ 1} Appellant, K.R., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her daughter to the Butler County Children Services Board ("BCCSB"). We affirm the juvenile court's decision.
 {¶ 2} On June 25, 2003, BCCSB filed a motion for permanent custody of appellant's daughter, S.P., born January 4, 2002. S.P. had been in the temporary custody of BCCSB for approximately 16 months during which reunification was attempted. Following a hearing, the juvenile court granted BCCSB's motion. Appellant appeals that decision, assigning three errors.
 {¶ 3} Assignment of Error No. 1:
 {¶ 4} "The court erred as a matter of fact and law and abused its discretion when it found that bccsb had made reasonable efforts to prevent removal of the child and/or termination of the parental rights."
 {¶ 5} R.C. 2151.419(A)(1) states that the "reasonable efforts" requirement applies to hearings held pursuant to R.C. 2151.28, R.C.2151.31(E), R.C. 2151.314, R.C. 2151.33, or R.C. 2151.353. BCCSB filed its motion for permanent custody under R.C. 2151.413, and the juvenile court held a hearing on that motion pursuant to R.C. 2151.414. Therefore, the "reasonable efforts" requirement in R.C. 2151.419(A) was not applicable to this case. See In re A.C., Clermont App. No. CA2004-05-041, 2004-Ohio-5531, at ¶ 30 ("By its plain terms, * * * [R.C. 2151.419(A)] does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414."); see, also, In re T.T., Butler App. Nos. CA2004-07-175 and CA2004-08-198, 2005-Ohio-240, at ¶ 11. Accordingly, we overrule appellant's first assignment of error.
 {¶ 6} Assignment of Error No. 2:
 {¶ 7} "The court erred as a matter of fact and law and abused its discretion when [it] found terminating the parental rights of appellant to be in the child's best interests and when it so terminated the rights of appellant."
 {¶ 8} Assignment of Error No. 3:
 {¶ 9} "The court's decision and order of permanent custody was against the manifest weight of the evidence and failed to meet the requisite clear and convincing standard."
 {¶ 10} Because appellant's second and third assignments of error are closely related, we will address them together. Pursuant to R.C.2151.414(B)(1), a trial court may grant permanent custody of a child to a state agency if the court finds, by clear and convincing evidence, that it is in the child's best interest to do so, and that any one of the following circumstances apply:
 {¶ 11} "(a) The child * * * cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 {¶ 12} "(b) The child is abandoned;
 {¶ 13} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody;
 {¶ 14} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *."
 {¶ 15} In making its best interest determination, the trial court is required to consider all relevant factors, including, but not limited to, the following factors enumerated in R.C. 2151.414(D):
 {¶ 16} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 17} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 18} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
 {¶ 19} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 20} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 21} An appellate court's review of a trial court's decision finding clear and convincing evidence is limited to whether there is competent, credible evidence in the record supporting the trial court's determination. In re Starkey, 150 Ohio App.3d 612, 2002-Ohio-6892, at ¶ 16. A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In re Rodgers (2000),138 Ohio App.3d 510, 519-520.
 {¶ 22} Under the first best interest factor in R.C. 2151.414-(D), the juvenile court noted that appellant had no contact with S.P. from February 21, 2002 to November 4, 2002, while appellant was incarcerated. Prior to her incarceration, appellant resided at a faith-based home for homeless, single women. The court briefly discussed an incident that occurred at the home during which appellant took the infant S.P. to the basement of the home, turned out the lights, and did not respond to the home's staff. The police were subsequently called, and BCCSB took emergency custody of S.P.
 {¶ 23} In discussing appellant's visitation with S.P. following appellant's incarceration, the court cited the testimony of appellant's BCCSB caseworker, who stated that the visits were turbulent at first, but eventually became smoother. The court also cited the testimony of a BCCSB social service aide, who testified that appellant did not always act appropriately during the visitations. According to the aide, appellant only occasionally reacted when S.P. climbed on chairs, called S.P. a "cheat," took a doll from S.P., and became easily agitated by normal toddler behavior. The aide also testified that appellant missed three out of the last four visitations.
 {¶ 24} The court stated that S.P.'s alleged father has had no significant involvement in S.P.'s life. The court noted that an aunt of S.P. had contacted BCCSB about possible placement, but had not followed up with the agency.
 {¶ 25} The court noted the foster mother's testimony that S.P. is very comfortable in her foster parents' home. The foster mother testified that S.P. looks up to her sister, who also resides in the home. S.P. had resided in the home for approximately two years at the time of the hearing. The foster mother indicated that she and her husband were interested in adopting S.P.
 {¶ 26} Under the second best interest factor, the court noted that the guardian ad litem recommended permanent custody with BCCSB. At the permanent custody hearing, the guardian ad litem mentioned several specific concerns including appellant's continuing problems with anger, appellant's resistance to taking needed medication, and appellant's habitation with a man who has a history of domestic violence. Appellant herself testified at the permanent custody hearing that her live-in boyfriend had been physically abusive to her.
 {¶ 27} Under the third best interest factor, the court noted that S.P. had been in the temporary custody of BCCSB for more than 12 months of a consecutive 22-month period. By this court's calculations, S.P. had been in the temporary custody of BCCSB for approximately 16 months at the time BCCSB filed its permanent custody motion, nearly all of her life.
 {¶ 28} Under the fourth best interest factor, the court addressed S.P.'s need for legally secure placement. The court cited the opinion of appellant's BCCSB caseworker, who stated that because of the length of time S.P. had been in BCCSB's custody, appellant's lack of stability, and the lack of an appropriate relative for placement, permanent custody was necessary.
 {¶ 29} Pursuant to R.C. 2151.414(D)(5), the court also found that two of the factors in R.C. 2151.414(E)(7) to (11) applied. Specifically, the court found that appellant had "abandoned" S.P. within the meaning of R.C. 2151.414(E)(10) when she committed a voluntary act that resulted in her incarceration. Also, the court noted that appellant's parental rights with respect to another child had been involuntarily terminated. See R.C. 2151.414(E)(11).
 {¶ 30} After analyzing the best interest factors in R.C. 2151.414(D), the juvenile court found, by clear and convincing evidence, that permanent custody was in S.P.'s best interest. After thoroughly reviewing the record, we find competent, credible evidence supporting the juvenile court's decision. Additionally, we do not find that the court's decision was against the manifest weight of the evidence. Appellant did complete portions of her case plan, including parenting classes and some anger management classes. However, there was significant evidence in the record indicating that appellant could not provide a secure environment for S.P. Of primary concern was that appellant had not timely participated in individual counseling as recommended, had not prioritized obtaining prescription medication for her bipolar condition, and was living with a man who had a history of domestic violence. Those concerns, viewed in light of the long period of time S.P. had spent in BCCSB's temporary custody, supported the juvenile court's decision granting permanent custody to BCCSB.
 {¶ 31} S.P. had been in the temporary custody of BCCSB for approximately 16 consecutive months at the time BCCSB filed the permanent custody motion, well over the "twelve or more months of a consecutive twenty-two month period" in R.C. 2151.414(B)-(1)(d). Therefore, once the juvenile court found that permanent custody was in S.P.'s best interest, the court had the statutory authority to grant permanent custody. See R.C. 2151.414(B)(1); In re Mercurio, Butler App. No. CA2003-05-109, 2003-Ohio-5108, at ¶ 27. We find no error in the court's best interest determination, nor do we find error in the court's ultimate decision to grant BCCSB's motion for permanent custody.
 {¶ 32} Accordingly, we overrule appellant's second and third assignments of error, and affirm the decision of the juvenile court granting BCCSB's motion for permanent custody.
Young and Bressler, JJ., concur.