DECISION
{¶ 1} In these consolidated appeals, appellant, T.W., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating her parental rights and awarding permanent custody of her children, F.W., born in 1990, J.W., born in 1997, M.W., born in 1998, and E.W., born in 1999 to appellee, Franklin County Children Services ("FCCS"). For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On May 14, 1991, F.W. was adjudicated a dependent minor child. In June 1997, J.W. was adjudicated a neglected and dependent minor child. In December 1998, M.W. was adjudicated a neglected and dependent minor child. On January 13, 2000, E.W. was adjudicated a dependent minor child. After having been in relative placement from the dates of adjudication, the children were committed to the temporary custody of FCCS in September 2003.
 {¶ 3} On July 22, 2004, and pursuant to R.C. 2151.413, FCCS filed motions for permanent custody of F.W., J.W., M.W., and E.W. On February 24, 2005, FCCS filed amended motions for permanent custody of said children.
 {¶ 4} On September 12, 2005, the trial court held a hearing on the permanent custody motions. Two persons testified at the hearing: appellant and Lindsay Quinn, a caseworker for FCCS. Appellant testified that she is currently in prison serving a 22-month sentence for possession of cocaine and escape. Her anticipated date of release is July 25, 2006. Appellant last saw her children in August 2003. The children have been in foster care since September 2003. The caseworker testified that the children appeared to be bonded with each other and with the foster parents. She testified that the foster parents have not expressed whether they desire to adopt the children. She further testified that alleged fathers of three of the children had been identified, and that she attempted to contact those persons, but was unsuccessful in that regard. Additionally, the caseworker's testimony indicated that appellant failed to comply with requirements of her case plan. Specifically, she testified that appellant failed to attend parenting classes, maintain a drug free lifestyle, provide a means of support, and establish consistent, independent housing.
 {¶ 5} On September 16, 2005, the trial court entered judgment. The trial court committed the children to the permanent custody of FCCS for purposes of adoption and divested the parents of any and all parental rights, privileges, and obligations, except the right to timely appeal the permanent custody order.
 {¶ 6} Appellant timely appeals from that judgment, and has set forth the following assignments of error:
[I.] The trial court's factual finding that the children were too young to express their wishes for placement is not supported by competent and credible evidence.
[II.] The trial court erred by terminating the appellant's parental rights, when the appellant did not receive the effective assistance of counsel guaranteed by the Ohio and United States Constitutions.
A) Appellant's trial counsel was ineffective by failing to assert that R.C. 2151.414(B)(1)(d), facially and as applied in this case, violated the due process rights of the appellant under the Ohio and United States Constitutions.
B) Appellant's trial counsel was ineffective by failing to cross-examine the Guardian Ad Litem.
C) Appellant's trial counsel was ineffective by failing to object to the presence of the caseworker-witness throughout the proceedings.
[III.] The trial court erred and violated the due process rights of the appellant by terminating the appellant's parental rights where there was no evidence the county children services agency checked the Ohio Putative Father Registry to ascertain the names and whereabouts of the putative fathers of the minor children.
 {¶ 7} By her first assignment of error, appellant argues that the trial court's factual finding regarding the wishes of the children is not supported by competent and credible evidence.
 {¶ 8} Pursuant to R.C. 2151.414(B)(1), a court may grant permanent custody of a child to a state agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 9} Pursuant to R.C. 2151.414(D), a trial court must consider specific factors in determining whether a child's best interests would be served by granting a motion for permanent custody. Those factors are: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions (E)(7) to (12) of R.C. 2151.414 apply in relation to the parents and child.
 {¶ 10} In analyzing the best interests of the children, the trial court, pursuant to R.C. 2151.414(D), considered all relevant factors, including the interaction and interrelationship of the children with persons who may significantly affect the children, the wishes of the children, the custodial history of the children, and the childrens' need for a legally secure permanent placement. In assessing the wishes of the children, the trial court stated, in its September 16, 2005 judgment entry, at 3, that "[t]he wishes of the child(ren) are not expressed, the Guardian ad Litem (GAL). The maturity of the child(ren) are too young [sic]."
 {¶ 11} Appellant argues that the trial court's finding relating to the wishes of the children is contrary to the evidence in the record. Statements in the record, which are cited by appellant in support of her contention that the trial court erred, indicate that F.W. was happy with her current placement and that E.W. expressed a desire not to be reunited with the mother. Even assuming the trial court's finding relating to the wishes of the children is not supported by the evidence, that erroneous finding actually favors appellant's position. Moreover, other factors cited by the trial court support its finding that permanent custody is in the childrens' best interest. For example, the trial court considered the childrens' custodial history, including their placement in a foster home since September 2003, and the childrens' interaction and interrelationship with persons who may significantly affect them, including the fact that they are bonded with each other and the foster parents. In addition, the trial court determined that the childrens' need for a legally secure placement is essential, and that type of placement cannot be achieved without the granting of permanent custody of the children to FCCS. Therefore, appellant fails to demonstrate any prejudicial error as a consequence of the trial court's stated finding that the wishes of the children are not expressed. As such, we overrule her first assignment of error.
 {¶ 12} By her second assignment of error, appellant alleges that the trial court erred in terminating her parental rights because she did not receive effective assistance of counsel during the proceedings.
 {¶ 13} "[T]he two-part test for ineffective assistance of counsel used in criminal cases, announced in Strickland v.
[Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052] * * * is equally applicable in actions by the state to force the permanent, involuntary termination of parental rights." Jones v.Lucas County Children Services Bd. (1988), 46 Ohio App.3d 85,86. Pursuant to Strickland v. Washington (1984), 466 U.S. 668,687, 104 S.Ct. 2052, appellant must first demonstrate that his trial counsel's performance was deficient. In this regard, a court reviewing an ineffective assistance of counsel claim must determine whether, under the circumstances, the acts or omissions were "outside the wide range of professionally competent assistance." Id. at 690. Second, in order for appellant to establish ineffective assistance of trial counsel, she must demonstrate that the deficient performance prejudiced her. This requires appellant to show "that counsel's errors were so serious as to deprive [appellant] of a fair trial, a trial whose result is reliable." Id. at 687. In other words, "[t]he [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 {¶ 14} Under her second assignment of error, appellant sets forth three ways her counsel was allegedly deficient. We will address each alleged deficiency in turn.
 {¶ 15} First, appellant contends that her counsel was ineffective by not asserting that R.C. 2151.414(B)(1)(d) is unconstitutional, facially and as applied in this case. Appellant admits that this court previously has addressed and rejected the contention that R.C. 2151.414(B)(1)(d) is unconstitutional. (See appellant's brief, at 5, citing In re Brooks, Franklin App. No. 04AP-164, 2004-Ohio-3887, at ¶ 32, 54.) Indeed, this court has consistently rejected constitutional challenges to R.C.2151.414(B)(1)(d). See In re J.S., Franklin App. No. 05AP-615, 2006-Ohio-702; In re C.C., Franklin App. No. 04AP-883, 2005-Ohio-5163, at ¶ 11-12; In re Abram, Franklin App. No. 04AP-220, 2004-Ohio-5435, at ¶ 12-13; and In re Bray, Franklin App. No. 04AP-842, 2005-Ohio-1540, at ¶ 7-9. As such, we find appellant's contention that R.C. 2151.414(B)(1)(d) is unconstitutional to be without merit. Consequently, appellant's counsel was not ineffective by failing to raise the issue.
 {¶ 16} Second, appellant argues that her counsel was ineffective by not cross-examining the guardian ad litem. Pursuant to In re Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368, syllabus, "[i]n a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation." Thus, appellant's counsel was permitted to cross-examine the guardian ad litem, but chose not to exercise that option.
 {¶ 17} Appellant maintains that cross-examination may have revealed a more "nuanced" explanation of the childrens' attitude toward their mother. However, appellant's argument is based on speculation. Nothing in the record suggests that appellant's counsel's decision not to cross-examine the guardian ad litem was not within the realm of reasonable trial strategy. Moreover, appellant fails to demonstrate that she was prejudiced by her counsel's decision not to cross-examine the guardian ad litem. Therefore, we do not find that appellant's counsel was ineffective in not cross-examining the guardian ad litem.
 {¶ 18} Third, appellant argues that her counsel was ineffective in not objecting to the presence of the caseworker-witness throughout the trial court proceedings. In this case, Ms. Quinn, the FCCS caseworker who testified at the permanent custody hearing, was present during appellant's testimony. As noted by appellant, her counsel did not object to Ms. Quinn's presence during the hearing. Evid.R. 615 provides, in pertinent part, as follows:
(A) Except as provided in division (B) of this rule, at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. * * *
(B) This rule does not authorize exclusion of any of the following persons from the hearing:
* * *
(2) an officer or employee of a party that is not a natural person designated as its representative by its attorney[.]
 {¶ 19} In In re Thompson, Franklin App. No. 02AP-557, 2003-Ohio-580, the appellant argued that it was error for the trial court to deny her objection to the presence of an FCCS caseworker-witness during the trial proceeding. The trial court permitted an FCCS caseworker-witness to be present in the courtroom when others were asked to remain outside. This court determined that, pursuant to Evid.R. 615, the caseworker-witness was permitted to be present. See id.
 {¶ 20} Appellant contends that "there is a clear distinction between a witness who is [an] interested party in reality and a party by virtue of employment." (Appellant's brief, at 7.) Appellant also asserts that the attorney representing FCCS was an employee of the agency, thereby creating a situation where more than one "designated representative" was present on behalf of FCCS. For those reasons, appellant argues that this court erroneously applied Evid.R. 615(B)(2) in Thompson, and thatThompson should be reversed. We disagree.
 {¶ 21} According to appellant's reasoning, if an attorney is an employee of the party that is not a natural person, then the attorney is the representative under Evid.R. 615(B)(2), and no one else may be designated as a representative. The rule does not provide for such a result. In addition, the rule does not distinguish between different levels of interest one party versus another may have regarding a matter. In view of Evid.R. 615(B)(2), we find no error in the presence of the caseworker-witness during the trial court proceedings.
 {¶ 22} Moreover, even assuming arguendo that it was error for the caseworker to be present during the trial proceedings, appellant does not assert how she was prejudiced by the presence of the caseworker. Indeed, upon our review of the record, we find no indication that the caseworker's testimony, which occurred after FCCS's initial cross-examination of appellant, was tainted or improperly influenced because of her presence during the trial proceedings. Therefore, we conclude that appellant's counsel was not ineffective in not objecting to the presence of the caseworker throughout the trial court proceedings.
 {¶ 23} Based on the foregoing, we conclude that appellant was not denied effective assistance of counsel, and we accordingly overrule appellant's second assignment of error.
 {¶ 24} By her third assignment of error, appellant argues that the termination of her parental rights violated due process because there was no evidence that FCCS checked the Ohio putative father registry to ascertain the names and location of the putative fathers of the minor children.
 {¶ 25} In support of this assignment of error, appellant cites R.C. 3107.062, which provides for the establishment of a putative father registry in Ohio. In order to register, a putative father must complete a registration form prescribed under R.C. 3107.065 and submit it to the department of job and family services. R.C. 3107.062. The registration form must include, inter alia, the name of the putative father and the name of the mother of the minor. See id. Additionally, R.C. 3107.062
mandates that the department of job and family services maintain the registration forms in a manner that enables it to access a particular registration form using the name of the putative father or of the mother. The putative father may register before or not later than 30 days after the birth of the child. See id.
 {¶ 26} Appellant seems to argue that the trial court acted in error by granting permanent custody in the absence of evidence that the putative father registry had been checked. In this case, there was no direct evidence presented at the permanent custody hearing indicating whether FCCS checked the putative father registry, or whether any or all of the fathers of the children registered pursuant to R.C. 3107.062. However, the record contains affidavits indicating that diligent searches were made to locate known and unknown putative fathers of the children. Moreover, it can be inferred from the caseworker's testimony that FCCS took affirmative steps to locate the fathers of the children. Nonetheless, appellant has cited no law requiring that, prior to the granting of permanent custody of a child, the party moving for permanent custody must present direct evidence that the putative father registry was checked.
 {¶ 27} Additionally, FCCS argues in this appeal that appellant lacks standing to allege the violation of any rights of any putative father. "Standing, in the most elementary sense of the concept, requires that the right to maintain an action must be vested in the person instituting it." In re Shepard (Mar. 26, 2001), Highland App. No. 00CA12, citing Steinle v. City ofCincinnati (1944), 142 Ohio St. 550. "Generally, appeals are permitted only to correct errors injuriously affecting the appellant." In re Ciara B. (July 2, 1998), Lucas App. No. L-97-1264, citing In re Hiatt (1993), 86 Ohio App.3d 716, 721. However, "[a]n appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant." In re Smith (1991), 77 Ohio App.3d 1,13, citing State v. Ward (Sept. 21, 1988), Summit App. No. 13462.
 {¶ 28} Appellant argues that the rights of potential putative fathers of the children were violated because the putative father registry was not checked before parental rights were terminated. Appellant further argues that she has standing to raise this claim because her due process rights were violated as a result of the putative father registry not being checked. Appellant's argument assumes that the putative father registry was not checked. However, as stated above, the record contains affidavits indicating that diligent searches were made to locate known and unknown putative fathers of the children, and the caseworker's testimony at the hearing supports that assertion. Additionally, appellant has failed to explain how she was prejudiced by the alleged failure of FCCS to check the putative father registry. Upon review, we find that the record before this court does not support appellant's argument that she was prejudiced by FCCS's alleged failure to check the putative father registry.
 {¶ 29} Based on the foregoing, we overrule appellant's third assignment of error.
 {¶ 30} Having overruled all three of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
Judgment affirmed.
French and McGrath, JJ., concur.